IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 2, 2007 Session

## MICHAEL WILHELM v. KROGERS, d/b/a PEYTON'S SOUTHEASTERN

**Appeal by permission from the**
**Supreme Court Special Workers' Compensation Appeals Panel**
**Circuit Court for Bradley County**
**No. V-04-884      Lawrence H. Puckett, Judge**

_____

**No. E2006-00268-SC-WCM-WC - Filed on August 17, 2007**
_____

In 2004, the plaintiff, Michael Wilhelm, filed a workers' compensation claim alleging an injury to his back and left hip.  In response, the defendant, Krogers d/b/a Peyton's Southeastern, denied the claim, asserting that the injuries did not arise out of his employment.  At the conclusion of the trial, the trial court awarded the plaintiff a 35% permanent partial disability to the body as a whole.  The Special Workers' Compensation Appeals Panel affirmed the judgment.  Because, however, the injuries do not qualify as work-related and an earlier workers' compensation settlement bars recovery, the judgment must be reversed and the case dismissed.

**Tenn. Code Ann. § 50-6-225(e); Findings of Fact and Conclusions of Law of the Special Workers' Compensation Appeals Panel Rejected; Case Dismissed**

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER and CORNELIA A. CLARK, JJ., and E. RILEY ANDERSON, SP.J., joined.

Lisa L. Conner, Chattanooga, Tennessee, for the appellant, Krogers, d/b/a Peyton's Southeastern.

H. Franklin Chancey, Cleveland, Tennessee, for the  appellee, Michael Wilhelm.

**OPINION**

### I.  Factual and Procedural Background

Michael Wilhelm ("the Plaintiff"), now 38 years old, began working for Krogers, d/b/a/ Peyton's Southeastern ("the Defendant") in 1998 as a "case picker," a position that requires "stepping up and stepping down and lifting heavy cases" for loading into trucks for shipment. Several months later, he ruptured his right Achilles tendon while on the job.  As a result of his injury, the Plaintiff developed symptoms of reflex sympathetic dystrophy ("RSD"), a condition that causes

him to experience sharp pain and swelling in his lower right extremity. Since the time of the original injury, the Plaintiff has walked with a pronounced limp.

In a medical deposition related to the 1999 injury, Dr. J. Patterson Stone, the treating physician, testified that the Plaintiff's limp would likely cause left hip and lower back problems in the future. In another deposition related to the earlier injury, the Plaintiff acknowledged that one of his doctors had informed him that he would experience lower back and left hip problems because of his gait.

In 2003, the first claim was settled. The judgment approving the settlement specifically noted that treating physician had made a finding of an 11% permanent partial impairment to the lower extremity. The order further provided that "[i]n an effort to compromise their differences, all parties have agreed upon a lump sum payment . . . in full and final settlement of all claims of whatever kind or nature due to the Plaintiff under the [workers'] compensation law of Tennessee." The agreement directed that the Plaintiff would also further receive any and all reasonable and necessary medical treatment in the future which directly and naturally resulted from the 1999 injury.

After the settlement, the Plaintiff was assigned a light duty position in the "tote room," an area where plastic boxes, weighing approximately three pounds when empty, are filled with orders. The Plaintiff, who could perform his duties while seated, removed old labels from the boxes and then hung them on an overhead conveyor belt for distribution throughout the plant. He testified that his duties required him to walk approximately 250-300 yards each day.

After clocking in on May 1, 2004, the Plaintiff felt a "pop" while walking to his work station and then experienced pain in his lower back and left hip area. He was placed in a wheelchair, treated by the company nurse, and then transported to his vehicle. A few days later, the Plaintiff was examined by Dean Coulter, a physical therapist who performs contract work for the Defendant. The Plaintiff complained to the therapist that "this was the second time in three years that [this] has happened to me." Dr. Steven Williams, a chiropractor, and Drs. Rickey Hutcheson and Elmer Pinzon, orthopaedic physicians, also treated the Plaintiff.

In his workers' compensation claim for the impairment to his left hip and back, the Plaintiff admitted that his new injuries were a direct result of his 1999 ruptured Achilles. He argued, however, that because the more recent injury affected an entirely separate part of his body, he was entitled to additional permanent partial disability benefits. Because his Achilles rupture arose out of and occurred in the course and scope of his employment with the Defendant, Plaintiff argued that his pain was not idiopathic but the result of his deteriorating condition occurring directly and naturally as a consequence of the original compensable injury. In response, the Defendant contended that the 2004 condition developed as a direct result of the limp caused by the 1999 injury. Because the RSD and the antalgic gait (adopted to deal with pain) were apparent at the time of the prior settlement, the Defendant argued that no additional permanent partial disability should be awarded.

At trial, the Plaintiff introduced the deposition of Dr. Sean Brown, a physiatrist, a physician

who combines the specialties of orthopaedics, rheumatology, and neurology into one practice area. After evaluating the Plaintiff in 2005, Dr. Brown determined that walking had caused the back and hip pain the Plaintiff experienced in 2004. He observed that the RSD caused the Plaintiff to "favor his hip, left hip" causing "more weight bearing on it," explaining that because RSD is a nerve problem often occurring after a traumatic injury, complications develop over time "with the signs showing up in the bone itself." He described RSD as a very painful condition with no cure. Dr. Brown believed that the hip and lower back condition was separate from the RSD. It was his opinion that the Plaintiff's awkward limp would eventually necessitate left hip replacement surgery. Dr. Brown assessed a 20% impairment to the left hip, a 6% impairment to the back, and a combined impairment of 14% to the body as a whole.

Dr. McKinley Lundy, who also testified by deposition, examined the Plaintiff in November of 2005 at the request of the Defendant. He also made a diagnosis of RSD, which he described as a "complex regional pain syndrome." He further determined that the Plaintiff had chronic trochanteric bursitis of the left hip, which was more likely than not caused by the abnormal gait. Dr. Lundy found no impairment to the Plaintiff's back, but found 7% impairment to the left lower extremity and 3% to the body as a whole. Dr. Lundy recalled that the Plaintiff entered his office on crutches. He later observed him walk unassisted in the parking area for approximately sixty feet.

In 2005, the Defendant discharged the Plaintiff when he left work before the end of his shift without contacting his supervisor. Until that occurrence, the Defendant had allowed the Plaintiff intermittent leave in order to transport his dependent father to medical appointments. Because the Plaintiff had occasionally abused the privilege, however, and had been previously warned against doing so, his employment was terminated after the 2005 incident.

The trial court concluded that the Plaintiff's back injury occurred as he walked to his work-station, that his increased pain was the result of his employment, and that the claim was, therefore, compensable. The court awarded a 35% vocational impairment to the body as a whole and held that the settlement for the previous injury was for a specific scheduled member, the right lower extremity, and that there was no injury to the left hip and the back at that time. While the trial court described the 2004 injury as "the natural and probable result of his prior compensable on the job injury to his opposite extremity in 1999," it also ruled that the Plaintiff was entitled to a second recovery because the settlement on the first claim did not include the anatomical areas covered in the latter claim.

Unlike the trial court, the Special Workers' Compensation Appeals Panel determined that the Plaintiff's injury was an idiopathic event; however, the Panel concluded that because walking as much as six hundred yards daily was a hazard incident to employment, the injury was compensable. The Panel further observed that because the 2004 injury had not manifested itself at the time of the settlement, the prior settlement did not bar the claim.

## II. Scope of Review and Applicable Law

In workers' compensation cases, we review the trial court's findings of fact de novo accompanied by a presumption of correctness unless the evidence preponderates otherwise. Tenn. Code Ann. § 50-6-225(e)(2) (Supp. 2006); Lay v. Scott County Sheriff's Dep't, 109 S.W.3d 293, 296 (Tenn. 2003). "This standard of review requires us to examine, in depth, a trial court's factual findings and conclusions." Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991) (citing Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 675 (Tenn. 1991)). When there are no material facts in dispute, however, we review the trial court's ruling de novo with no presumption of correctness. Vinson v. United Parcel Serv., 92 S.W.3d 380, 384 (Tenn. 2002). Our standard of review of questions of law is de novo with no presumption of correctness. Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003).

When the trial judge has seen and heard the witnesses, especially if issues of credibility and weight to be given oral testimony are involved, "considerable deference is afforded the trial court's findings of fact." Long v. Tri-Con Inds., Ltd., 996 S.W.2d 173, 177 (Tenn. 1999). If medical testimony is presented by deposition, this Court may make an "independent assessment of the medical proof to determine where the preponderance of the evidence lies." Conner Bros. Excavating Co. v. Long, 98 S.W.3d 656, 660 (Tenn. 2003). Any reasonable doubt as to whether the worker's injuries arose out of his employment must be construed in the worker's favor. Whirlpool Corp. v. Nakhoneinh, 69 S.W.3d 164, 168 (Tenn. 2002).

The workers' compensation statute in Tennessee permits recovery for injury by accident "arising out of and in the course of employment." Tenn. Code Ann. § 50-6-103(a) (2005). It is well-established that an injury must both "arise out of" as well as be "in the course" of employment in order to be compensable under the workers' compensation statute. Thornton v. RCA Serv. Co., 221 S.W.2d 954, 955 (Tenn. 1949). "[T]he phrase 'in the course of' refers to time, place and circumstances, and 'arising out of' refers to cause or origin." Brimhall v. Home Ins. Co., 694 S.W.2d 931, 932 (Tenn. 1985). "'[A]n injury by accident to an employee is 'in the course of' employment if it occurred while he was performing a duty he was employed to do; and it is an injury 'arising out of' employment if caused by a hazard incident to such employment.'" Travelers Ins. Co. v. Googe, 397 S.W.2d 368, 371 (Tenn. 1965) (quoting Shubert v. Steelman, 377 S.W.2d 940, 942 (Tenn. 1964)). "An accidental injury arises out of one's employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel July 7, 1993). "[G]enerally, an injury arises out of and in the course of employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment . . . ." Hall v. Auburntown Indus., Inc., 684 S.W.2d 614, 617 (Tenn. 1985).

> [T]he mere presence of an employee at the place of injury because of his employment will not alone result in the injury being considered as arising out of the employment. If the injury . . . resulted from an exposure which is no more or different from that of

4

any other member of the public similarly situated in place and time, it is not compensable.

Sudduth v. Williams, 517 S.W.2d 520, 523 (Tenn. 1974).

### III.  Analysis of the Claim

Because the medical proof in this case established that the cause of the Plaintiff's pain was known to be from his prior RSD condition (as opposed to being of an unknown etiology), the trial court determined that the injury was not idiopathic.  As indicated, the Panel disagreed but ruled that even if the left hip and back problems were idiopathic in nature, "the fact that [the Plaintiff] . . . walk[ed] some six hundred yards daily to and from his work station" qualified as an employment hazard "which caused or exacerbated" the injuries.

There are a number of cases helpful to the determination of whether the injury qualifies as idiopathic and, if so, whether the injury is compensable.  For example, in Greeson v. Am. Lava Corp., 392 S.W.2d 931 (Tenn. 1965), an employee fell at work as a result of a pre-existing spinal cord condition.  Although the condition caused atrophy, numbness, and tingling in his right leg, this Court denied workers' compensation benefits.  Id. at 935.  Because "the [employee] fell because his leg failed to respond[,] [and] the evidence fully supports the finding that the petitioner's fall was caused by an idiopathic attack," there was no entitlement to recovery.  Id. at 933.  The Court described "Tennessee [as] among those states denying recovery for the effects of an idiopathic fall to the level ground or bare floor."  Id. at 934.

In McClain v. Allied-Bendix, Inc., 1994 WL 901486 (Tenn. Workers' Comp. Panel Apr. 5, 1994), the employee's knee "went out" at work while he was walking after the completion of his daily duties.  He had injured his knee some six years earlier and his physician testified that the employee's "preexisting condition predisposed him to . . . the torn meniscus injury."  Id. at *2.  The Special Workers' Compensation Appeals Panel held that the employee's fall at work was "caused by an idiopathic condition of the [employee]; there was no condition of the employment that presented a peculiar or additional hazard to the [employee]; and this was not a totally unexplained fall."  Id. at *3.  Similarly, in Reynolds v. Wal-Mart Stores, Inc., 1996 WL 677109, at *1 (Tenn. Workers' Comp. Panel Nov. 25, 1996), the employee fell and was injured while walking out of a dressing room.  Prior to the fall, she had suffered from Leriche's syndrome, which caused pain or numbness in the legs.  Because there was no work hazard, the Panel denied benefits because "the record preponderates in favor of the finding that the [employee's] fall was occasioned by a pre-existing idiopathic condition."  Id. at *4.

In Greeson and its progeny, the employees had pre-existing conditions which affected their ability to walk.  No work hazard was present when the employees experienced the subsequent injury. Under these circumstances, this Court and its Panels have consistently ruled that the new injury is not compensable.  That is, the injuries would have occurred whether the employee happened to be at work or at another location.

In workers' compensation cases, "benefits have generally not been allowed where the cause of [an injury] has been found to be due to some diseased or other idiopathic condition personal to the employee, absent some 'special hazard' of the employment." Sudduth, 517 S.W.2d at 523 (citing Arthur Larson, Workmen's Compensation Law § 10.31 (1972)). Recently, this Court made the following observations:

[A]n injury due to an idiopathic condition is compensable if an employment hazard causes or exacerbates the injuries. The accident arises out of employment if there is a causal connection between the conditions under which the work is performed and the resulting injury. This causal link must be between the employment and the injury, rather than between the employment and the idiopathic episode.

Phillips v. A & H Constr. Co., 134 S.W.3d 145, 148 (Tenn. 2004). In order for a recovery, under these circumstances, there must be "some hazard [i.e., driving] incident to his or her employment. If driving a vehicle is part of an employee's job, then it is certainly a hazard incident to employment." Id. at 152. In Phillips, this Court held that "[t]o prove that his injuries arose out of his employment, [a claimant] must prove that [a special hazard incident to employment] caused or exacerbated his injuries, not that any condition of work caused his idiopathic loss of consciousness." Id.

Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the injured employee's ambulation. See Williams v. Metro. Gov't of Nashville & Davidson County, 2004 WL 370296, at *4 (Tenn. Workers' Comp. Panel March 1, 2004); McMillin v. McKenzie Special Sch. Dist., 2001 WL 34090141, at *3 (Tenn. Workers' Comp. Panel July 12, 2001). Typically, an employee must walk a short distance to and from his work station every day. The trial court in the instant case found as a matter of fact that the Plaintiff's injury could have occurred anywhere outside of work. Dr. Brown acknowledged that the injury would have eventually occurred, whether the Plaintiff was walking at work or not. Even the Plaintiff conceded that "[t]his is the second time in three years this has happened to me." Finally, there was simply no condition or hazard at the place of employment. The record establishes that the Plaintiff was walking on an obstacle-free concrete surface when he felt an increase in pain in his back and left hip area. Some hazard, such as the presence of a liquid, hole, obstacle, or a vehicle, must exist before an award, under circumstances like these, is permissible. In this case, the testimony was that the floor leading to the work station was smooth and flat, without any steps, with no rough or uneven surfaces.

## IV. Prior Settlement

The Defendant also submits that the claim is barred because the Plaintiff entered into a "full and final [lump sum] settlement of all claims of whatever kind or nature" as a result of his 1999 injury. As to that issue, the Special Workers' Compensation Appeals Panel found as follows:

[T]he injuries Plaintiff complains of here had not manifested themselves at the time

6

of the earlier settlement. Settlements of [workers'] compensation claims are construed under the same rules which apply to compromise and settlement agreements generally. Layne v. Tenn. Consol. Coal Co., 337 S.W.2d 237, 238 (Tenn. 1960) [(reversing the dismissal of a claim for silicosis where a previous settlement made no mention of that condition, and where the condition was allegedly unknown at the time of the settlement)]. In this context, we note that release agreements are construed under ordinary contract rules with the primary goal being to effectuate the parties' intention. Thus, release agreements ordinarily apply only to claims which are within the parties' contemplation, and existing at the time of the execution of the agreement. They do not bar claims which arise after the release. We also note that an injury limited to a scheduled member will only entitle a claimant to an award for that particular member, and not for the body as a whole. Thus, Mr. Wilhelm's prior award for disability to his right lower extremity could not have compensated him for injuries to his back and left hip. For these reasons, we hold that the previous settlement does not bar Mr. Wilhelm's claims here.

The Plaintiff argues that at the time he compromised his initial claim, his injury or accompanying disability neither extended to another scheduled member nor to his body as a whole. It is his position that no matter what he knew or did not know at the time of the settlement, he could not have received compensation at that time for any problem that later developed in his left hip. He contends that public policy supports his right to seek compensation for an injury to his back and the hip opposite his initial injury.

As indicated, the trial court concluded that the Plaintiff's 2004 injury was the direct and natural result of the 1999 injury. Dr. Stone had testified that the limp from the RSD condition would likely cause problems to the left hip and back. In our view, the subsequent injury was the natural and probable consequence of the first.

Dr. Lundy independently confirmed that the 2004 hip and back injuries were the result of the Plaintiff's prior injury. He testified that the trochanteric bursitis was more likely than not related to the abnormal gait, which was in consequence of "his injury to the [prior] right foot and ankle area." It was Dr. Brown's opinion that the prior RSD injury of his right leg caused such an abnormal gait, that alone could have caused his current injuries. His impairment rating was based upon the abnormal gait. Even the Plaintiff conceded that "every medical doctor has taken the . . . position that [the Plaintiff's] condition is caused by the way he walks and that is directly attributable to the occupational injury he suffered back in 1999."

Tennessee Code Annotated section 50-6-231 provides "[a]ll amounts paid by the employer and received by the employee or the employee's dependents, by lump sum payments, shall be final." Our decision in Underwood v. Zurich Ins. Co., 854 S.W.2d 94, 97 (Tenn. 1993) controls. In that case, an employee attempted to re-open his workers' compensation award because of an increase in disability. This Court ruled that

"by entering into lump-sum settlements both parties run a risk of injury. The employee runs the risk that his disability may increase in the future and the employer runs the risk that the disability of the employee may decrease in the future, but both parties are bound and foreclosed by the entry of a valid decree approving a lump-sum settlement."

Id. (quoting Corby v. Matthews, 541 S.W.2d 789, 793 (Tenn. 1976)).

The Plaintiff, therefore, is also precluded by the prior settlement from recovering additional benefits. Because the trial court found and we agree that the injury in this matter was "the natural and probable result of his prior compensable on the job injury to his opposite extremity in 1999 which occurred while working for this very employer," his claim must fail on this additional ground. When the Plaintiff entered into his prior settlement, the altered gait had been an ongoing condition since the 1999 work injury. At the time of the settlement, the parties had every reason to contemplate a further progression of symptoms. The medical testimony is uncontradicted. That the settlement provides for open lifetime medical care for conditions causally related to the 1999 injury is an indication that future complications might have been contemplated. Thus, the Plaintiff is foreclosed from receiving additional vocational disability benefits for the 2004 claim.

## V. Conclusion

The hip and back injuries at issue are not compensable because they did not arise out of the Plaintiff's employment. An injury which occurs as an employee walks on a level, obstacle-free, concrete surface is not compensable unless a hazard contributes to the injury. Moreover, the lump-sum settlement for the 1999 work-related injury bars recovery for this claim pursuant to Tennessee Code Annotated section 50-6-231. That is, the Plaintiff's complications were the "natural and probable result" of the initial impairment.

The judgment of the trial court is reversed and the cause is dismissed. Costs are assessed to the Plaintiff, Michael Wilhelm, for which execution may issue, if necessary.

_____
GARY R. WADE, JUSTICE

8