

FILED

February 19, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:51 PM

## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE: Emily Haynes**

**DOCKET #: 2014-05-0033**

**EMPLOYER: DCI Donor Services**

**STATE FILE #: 91485-2014**

**INSURANCE CARRIER: The Hartford Medical Management Center/Sentinel Insurance Company Ltd.**

**DATE OF INJURY: November 4, 2014**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed on January 15, 2015, by Employee, Emily Haynes, pursuant to Tennessee Code Annotated section 50-6-239. Ms. Haynes requested an on-the-record ruling pursuant to Rule 0800-02-21-.14(2) (a) of the Tennessee Comprehensive Rules and Regulations to determine if Employer, DCI Donor Services ("DCI"), is obligated to provide temporary disability and/or medical benefits. On January 28, 2014, the Court found, upon review of the entirety of the claim file, the need for additional information. The Court ordered the parties to appear at a telephonic Expedited Hearing on February 12, 2015. Ms. Haynes represented herself. T. Tamara Gauldin represented DCI and Carrier ("Hartford"). After reviewing Employee's Request for Expedited Hearing and the evidence presented at the Expedited Hearing, and considering the applicable law, the undersigned enters the following order denying Employee's request for medical benefits.[1]

## ANALYSIS

### Issue

*Whether Ms. Haynes sustained an injury that arose primarily out of her employment.*

---

1 At the hearing, the Court observed that Ms. Haynes checked a box on a form to indicate that she seeks temporary disability benefits. The Court explained that she is ineligible for such benefits because the Workers' Compensation Law states that that no compensation is allowed for the first seven (7) days of disability resulting from the injury, excluding the day of the injury. Tenn. Code Ann. § 50-6-205(a) (2014). Ms. Haynes agreed she missed two days of work and withdrew her claim for TTD benefits.

1

**Evidence Submitted**

The Court admitted into evidence the following items:

Exhibit 1: Records from Concentra Medical Centers, November 5-20, 2014
Exhibit 2: Employee's recorded statement
Exhibit 3: First Report of Injury
Exhibit 4: Wage statement
Exhibit 5: Form C-42, Choice of Physician
Exhibit 6: Form C-23, Notice of Denial.

The Court designated the following as the technical record:

- Petition for Benefit Determination
- Dispute Certification Notice
- Request for Expedited Hearing.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

**History of Claim**

Ms. Haynes is a thirty-one (31) year-old resident of Cannon County, Tennessee. She works for DCI as a senior processing coordinator. She testified that on November 4, 2014, near the lunch hour, she was completing paperwork at her desk and then "stood up, turned left—to my left, to go to the copier I believe, and my left kneecap popped out from the socket – dislocated." She cried out for help before manipulating the kneecap back into place herself.

The parties agreed that on November 5, 2014, DCI told Ms. Haynes to go to Concentra.[2] Ms. Haynes sought treatment that same day (*See generally*, Exhibit 1). Terrie Wheeler, PA, diagnosed "pain in joint involving lower leg," and, "sprain of unspecified site of knee and leg." She placed Ms. Haynes on restricted duty and ordered physical therapy and an MRI. On November 12, 2014, Dr. Jamira Duffy also ordered physical therapy. Dr. Duffy noted, in relevant part, "She reports 2 prior right kneecap dislocations. One was in 1998 and was associated with an ACL tear but did not require surgery. The second time occurred at work with the same employer in 2012. She had an MRI done at that time which was negative." Ms. Haynes testified that she subsequently completed four or five sessions of physical therapy but she did not introduce the records as evidence. Hartford refused to approve the MRI. Ms. Haynes

---

2 Tennessee Code Annotated section 50-6-204(a)(3)(A) (2014) provides that in any case where an employee has suffered an injury and expressed a need for medical care the employer shall designate a group of three (3) or more independent reputable physicians from which the injured employee shall select one to be the treating physician. DCI did not follow this procedure. DCI's noncompliance is not determinative of the outcome in this case, but the Court nonetheless advises DCI prospectively to adhere to the law's requirement should any other employee allege a workplace injury.

2

gave a recorded statement to Hartford on November 21, 2014 (Exhibit 2). Hartford denied Ms. Haynes' claim on December 3, 2014 (Exhibit 6).

Ms. Haynes testified that after the denial, she sought additional treatment from her private-pay orthopedic physician, whose treatment records she did not introduce as evidence. Ms. Haynes testified, without objection, that her physician performed an MRI and ruled out an ACL tear, but opined the need for surgery. Her physician lifted PA Wheeler's restrictions and she returned to regular duty.

On cross-examination, Ms. Haynes confirmed that she suffered two previous left-knee dislocations: in 2013, while standing up from her desk at work, and in 1998. In the 1998 incident, she suffered an ACL tear, which did not require surgery. With regard to the incident itself, Ms. Haynes admitted not holding or lifting anything when she got up from her desk. She further agreed that, given her two prior left-knee dislocations, no doctor diagnosed the November 4, 2014, incident as the primary cause of her knee popping out of place.

### Ms. Haynes' Contentions

Ms. Haynes contends she suffered a compensable workplace injury and is entitled to additional medical benefits.

### DCI's Contentions

DCI asserts that Ms. Haynes suffered an idiopathic injury. Ms. Haynes merely stood and turned. Her injury is personal to her because she previously suffered two dislocations. Further, there is no medical proof that the injury is work-related. Because Ms. Haynes' injury is idiopathic in nature, she did not sustain an injury arising primarily out of her employment. DCI also argues that no additional medical treatment is necessary because Ms. Haynes' private-pay physician released her to regular duty.

### Findings of Fact and Conclusions of Law

#### Standard Applied

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003) and Tenn. Code Ann. § 50-6-239(d)(1)(2014). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. The employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13)(2014).

#### Factual Findings

The Court finds that, on November 4, 2014, Ms. Haynes sustained an injury to her left kneecap at work when she stood up from a desk and turned to her left. She stood up to go to the

copier. She was not lifting or carrying anything at the time. On November 5, 2014, DCI directed Ms. Haynes to Concentra. Ms. Haynes suffered a left-knee strain, requiring physical therapy and follow-up care. The Concentra medical records do not state whether the injury is work-related.

*Application of Law to Facts*

Justice Wade authored two opinions that explain causation as it relates to idiopathic injuries.

First, in *Wilhelm v. Krogers,* he reiterated:

> It is well-established that an injury must both "arise out of" as well as be "in the course" of employment in order to be compensable under the workers' compensation statute. The phrase "in the course of" refers to time, place and circumstances, and "arising out of" refers to cause or origin. An injury by accident to an employee is "in the course of" employment if it occurred while he was performing a duty he was employed to do; and it is an injury "arising out of" employment if caused by a hazard incident to such employment. An accidental injury arises out of one's employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. ... The mere presence of an employee at the place of injury because of his employment will not alone result in the injury being considered as arising out of the employment.

*Wilhelm v. Krogers,* 235 S.W.3d 122, 127 (Tenn. 2007) (citations omitted).

In this case, Ms. Haynes was clearly in "the course of her employment" when the injury occurred. The important question for purposes of compensability is whether the injury arose primarily out of the employment or was idiopathic in nature. In workers' compensation cases, benefits have generally not been allowed where the cause of an injury has been found to be due to "some diseases or other idiopathic condition personal to the employee, absent some special hazard of the employment." *Wilhelm,* 235 S.W.3d at 128.

In a subsequent Panel opinion discussing idiopathic injuries, Justice Wade wrote that examples of injuries deemed idiopathic by the Supreme Court have included an unexplained seizure or fainting episode and a knee "giving way" resulting in a fall. *Veler v. Wackenhut,* 2011 Tenn. LEXIS 78, 2011 WL 336465, at 3 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (citations omitted).

Further, in *Wilhelm,* Justice Wade wrote that in *McCain v. Allied-Bendix.* Inc., 1994 WL 901486 (Tenn. Workers' Comp. Panel Apr. 5, 1994), the employee's knee "went out" at work while he was walking after the completion of his daily duties. *Wilhelm,* 235 S.W. at 128. The

4

employee had injured his knee some six years earlier and his physician testified that the pre-existing condition predisposed him to a torn meniscus injury. *Id.* The Panel held that the employee's fall at work was caused by an idiopathic condition and that there was no condition of the employment that presented a peculiar or additional hazard to the employee. *Id.* Using similar reasoning, the *Veler* Panel observed, when finding the injury compensable, that the employee's "duties included gaining access to forms to be filled out, and his work required him to reach above his head to retrieve those forms," and, "there was no evidence of a prior infirmity that might create a risk of a serious knee injury that was personal to the employee." *Veler,* 2011 Tenn. LEXIS 78 at 4-5.

In this case, Ms. Haynes credibly testified that, immediately prior to her knee dislocation, while completing paperwork at her desk, she stood up to go to the copier and nothing was in her hands at the time. When describing the incident, she failed to identify a peculiar or additional hazard related to her employment. This incident could have happened when Ms. Haynes stood up from a chair in settings other than work. Her mere presence at work is insufficient to classify the injury as work-related. Employer's assertion that the two prior dislocations indicate this type of injury is personal to Ms. Haynes is persuasive. Arguably, like the claimant in *Veler,* Ms. Haynes' duties might include accessing forms to be filled out or to reach above her head to retrieve forms. However, her testimony failed to specify her job duties. And, unlike the *Veler* employee, there is substantial evidence that Ms. Haynes suffered a prior infirmity, as recently as 2013, which might create a risk of knee injury that is personal to her. Moreover, as DCI's Counsel pointed out, no medical evidence states that Ms. Haynes' injury is work-related.

Therefore, Employee failed to meet her burden of establishing that her injury arose primarily out of her employment. The Court finds Employee's injury is idiopathic in nature and, as such, she is not entitled to workers' compensation benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Employee's claim against DCI or its workers' compensation carrier for the requested temporary disability benefits is denied, at this time, on the grounds of compensability.

2. This matter is set for Initial Hearing on March 17, 2015, at 10:30 a.m.

**ENTERED this the 19th day of February, 2015.**

Chief Judge Kenneth M. Switzer
Tennessee Court of Workers'
Compensation Claims

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers Compensation. You must dial in at 615-532-9552 or 866-943-0025 toll free to participate in your scheduled conference.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.** All conferences are set using Central Time (CT).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of the Court of Workers' Compensation Claims shall submit the record to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 19th day of February, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Emily Haynes, Employee | | | | | X | EHaynes@dcids.org |
| T. Tamara Gauldin, Employer's attorney | | | | | X | Tamara.gauldin@thehartford.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

7