

## COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| **Sharon L. Berry,** | ) **Docket No.: 2015-08-0200** |
| **Employee,** | ) |
| **v.** | ) **State File No.: 41816-2015** |
| **Wolfchase Hospitality, Inc. d/b/a/** | ) |
| **Hilton Garden,** | ) |
| **Employer,** | ) **Date of Injury: May 24, 2015** |
| **and** | ) |
| **State Auto Insurance Companies,** | ) **Judge: Jim Umsted** |
| **Insurance Carrier.** | ) |
| | ) |

---

## EXPEDITED HEARING ORDER DENYING REQUEST FOR BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on August 31, 2015, upon the Request for Expedited Hearing filed by Sharon L. Berry, the Employee, on July 21, 2015. Ms. Berry requests the Court to determine if the Employer, Wolfchase Hospitality, Inc. d/b/a Hilton Garden (Wolfchase), is obligated to provide medical and temporary disability benefits.

The undersigned Workers' Compensation Judge conducted an in-person Expedited Hearing on August 31, 2015. Robert O. Binkley, Jr., attorney for Wolfchase, did not appear for the in-person hearing, and the Court allowed him to participate by telephone. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Berry is not entitled to medical or temporary disability benefits.

### ANALYSIS

#### Issues

The parties agreed that the following issues identified on the DCN and on the attached Dispute Certification Checklist remain in dispute:

1. Compensability of the claim;

1

2. Whether Employee sustained an injury that arose primarily out of and in the course and scope of employment with Employer;
3. Whether Employee's injury was idiopathic in nature;
4. Whether Employee sustained an injury in the course of employment with Employer;
5. Whether Employer is obligated to pay for any past medical expenses and/or mileage expense;
6. Whether Employee is entitled to additional medical care as recommended by a physician;
7. Whether Employee is entitled to an evaluation by another physician; and
8. Whether Employee is entitled to any past or future temporary total disability benefits, and if so, in what amount.

## Evidence Submitted

The Court designated the following as the technical record:

1. Petition for Benefit Determination (PBD), filed June 18, 2015;
2. Dispute Certification Notice (DCN), filed July 21, 2015;
3. Request for Expedited Hearing, filed July 21, 2015; and
4. Employer's Position Statement, dated July 15, 2015.

The Court admitted into evidence the exhibits below. However, exhibits 10, 11, and 12 were marked for identification only, with authenticity stipulated, and objections as to relevancy, reasonableness, necessity, and causation reserved:

1. Affidavit of Sharon L. Berry;
2. Form C-20 Employer's First Report of Work Injury or Illness;
3. Form C-41 Wage Statement;
4. Form C-23 Notice of Denial of Claim for Compensation;
5. Denial letter dated June 9, 2015;
6. Document entitled "Employee Interview;"
7. Employee Pay Stubs dated between March 7, 2015, and June 3, 2015;
8. Medical records from Baptist Minor Medical Center Cordova;
9. Medical records from St. Francis Hospital Bartlett;
10. Limited work duty medical letters from Bartlett Raleigh Internal Medicine;
11. Off work notice from Tri-State Orthopaedics and Robotic Surgery;
12. Prescription information from Walgreens Pharmacy; and
13. Medical Bills from St. Francis Hospital Bartlett.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the

2

evidence.

Ms. Berry provided in-person testimony.

## Stipulations of the Parties

Prior to this Expedited Hearing, the parties stipulated, as follows:

1. Wolfchase is an Employer as defined by Tennessee Code Annotated section 50-6-102(12) (2014);

2. Ms. Berry was an employee of Wolfchase as defined by Tennessee Code Annotated 50-6-102(11) (2014) at the time of her alleged injury;

3. Ms. Berry timely reported her alleged injury;

4. Ms. Berry's average weekly wage (AWW) at the time of her alleged injury was $374.04, which is equivalent to a weekly compensation rate (CR) of $249.38.

## History of Claim

Ms. Berry worked as a chef for Wolfchase. She testified that May 24, 2015, was a busy workday, and her job required walking, standing, and cooking. Ms. Berry testified the she and her supervisor noticed that her swollen ankle. The supervisor recommended she put some ice on her ankle. Ms. Berry declined the suggestion and said she would keep working and take some Tylenol. Later, the swelling increased, and Ms. Berry went to Baptist Minor Medical Center (BMMC) near her workplace.

At BMMC, the physician diagnosed a left-ankle sprain. The handwritten history of injury was "while in the kitchen I turned and sprained my ankle." A more detailed typed history was "[Patient] was standing at work as a chef and turned quickly and felt pain in ankle and thought it was nothing but as she continued to work over the next one hour it just kept getting worse and started limping to walk because of pain in ankle." BMMC provided conservative treatment over a period of several days with medication and an ankle boot. Ms. Berry did not improve, and on June 4, 2015, BMMC recommended a referral to an orthopedic specialist.

On June 9, 2015, Wolfchase filed a "Notice of Denial," denying the claim on the basis "employee doesn't cite any specific injury or incident that arose out of her employment . . . ."

Ms. Berry decided to see her personal physician, Dr. Herminio Balderama. Dr. Balderama ordered an X-ray and MRI of the left ankle. On June 11, 2015, the

radiological testing revealed soft tissue swelling, subcutaneous edema, and tenosynovitis. According to Ms. Berry, Dr. Balderama referred her to an orthopedic physician, Dr. Apurva Dalal at Tri-State Orthopaedics and Robotic Surgery (Tri-State). Ms. Berry did not submit records from Tri-State, but she testified they gave her a shot in her ankle that made her feel much better. Ms. Berry remained off work until Tri-State released her on July 31, 2015. When she returned to work, Wolfchase reduced the number of hours she could work, so Ms. Berry decided to obtain employment elsewhere.

On cross-examination, Ms. Berry testified regarding her injury, "I don't know what happened . . . but something happened." Her testimony continued, as follows:

Q: As far as your ankle goes, you don't really know what happened?
A: Something happened to me in the kitchen when I was working that day.
Q: Did you slip on anything?
A: I don't believe I slipped on nothing. I don't believe, but I don't know, but it happened in the kitchen.

. . .

Q: You don't remember any water on the floor?
A: No, I don't believe there was no water on the floor.
Q: Okay. Don't believe there was any food on the floor?
A: I don't know. I promise you, I don't know.
Q: You didn't slip?
A: No. Not to my knowledge.
Q: You didn't fall, to your knowledge?
A: I definitely didn't fall.
Q: All you know is that your ankle started bothering you?
A: Well you know what, I turned. I turned with a pan in my hand . . . maybe that's when it happened. I don't know. I don't know . . . .

. . .

Q: Do you really know how you hurt your ankle, or do you just know that your ankle started hurting while you were at work?
A: I know I hurt my ankle in the kitchen.

. . .

Q: As far as what caused your ankle to start hurting, is it also true that you don't know what caused your ankle to start hurting?
A: Right. That's right. But, every day I go to work, and I don't hurt myself. That day, I hurt myself.
Q: The floor in the kitchen, is it level?
A: No . . . even though it's a brand new hotel . . . we had some things happen with the building, you know, and all that stuff.
Q: Is it true that you didn't trip or slip or fall over any of those things?
A: No. I didn't. That's the truth, I didn't.
Q: What's the surface of that floor?

4

A: Concrete . . . some kind of concrete.

Q: The fact that it's a concrete floor, that didn't have anything to do with your ankle starting to hurt? Did it?

A: I don't know. All I know . . . that day . . . I either sprained my ankle, it was a stress fracture, or something. When I turned around, I didn't never hear nothing crack . . . and when I turned around and went back on the line I felt my ankle swelling up. I really did.

Q: As far as your turning goes, was there anything unusual about that, with how you normally turn?

A: No. Not to my knowledge. No.

Ms. Berry filed a PBD on June 18, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the mediator filed the DCN on July 21, 2015.

## Ms. Berry's Contentions

Ms. Berry contends this is a compensable injury. Her ankle injury occurred while working. She requests that Wolfchase pay for her medical treatment with Tri-State and temporary disability benefits.

## Wolfchase's Contentions

Wolfchase contends Ms. Berry's ankle injury did not arise out of employment, but is an idiopathic injury. Therefore, it claims her injury is not compensable.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

The Court finds Ms. Berry sustained an injury to her left ankle during working hours on May 24, 2015 that required medical treatment. However, she does not know the cause of the injury.

*Application of Law to Facts*

Tennessee Code Annotated section 50-6-102(13) (2014) provides that "Injury" and "personal injury" mean "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that: (A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence . . . ."

It is well-established that an injury must both "arise out of" as well as be "in the course" of employment in order to be compensable under the workers' compensation statute. *Hill v. Eagle Bend Mfg., Inc.,* 942 S.W.2d 483, 487 (Tenn. 1997). The phrase "in the course of" refers to time, place and circumstances, and "arising out of" refers to cause or origin. *Id.* An injury by accident is "in the course of" employment if it occurred while he was performing a duty he was employed to do. *Fink v. Caudle,* 856 S.W.2d 952, 958 (Tenn. 1993). An injury "arises out of" employment if it is caused by a hazard incident to such employment. *Thornton v. RCA Serv. Co.,* 221 S.W.2d 954, 955 (Tenn. 1949). An accidental injury arises out of one's employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.,* 163 S.W.3d 673, 678 (Tenn. 2005). The mere presence of an employee at the place of injury because of his employment will not alone result in the injury being considered as arising out of the employment. *Wilhelm v. Krogers,* 235 S.W.3d 122, 127 (Tenn. 2007).

In this case, Ms. Berry was clearly in "the course of her employment" when the injury occurred. The important question for purposes of compensability is whether the injury arose primarily out of the employment or was idiopathic in nature. In workers' compensation cases, benefits have generally not been allowed where the cause of an injury has been found to be due to "some diseases or other idiopathic condition personal to the employee, absent some special hazard of the employment." *Wilhelm,* 235 S.W.3d at 128.

In this case, Ms. Berry credibly testified that she hurt her ankle in the kitchen, but she does not know the cause of her ankle injury. She could not point to any hazard of employment that caused her injury, nor could she identify a specific incident that caused

6

her injury.

Therefore, Ms. Berry failed to meet her burden of establishing that her injury arose primarily out of her employment. The Court finds Ms. Berry's injury is idiopathic in nature. As such, she is not entitled to workers' compensation benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Berry's claim against Wolfchase and its workers' compensation carrier for the requested medical and temporary disability benefits is denied. At this time, Ms. Berry has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits.

2. This matter is set for an Initial Hearing on November 23, 2015 at 1:00 p.m.

**ENTERED this the 5th day of October, 2015.**

**Jim Umsted, Judge**
**Court of Workers' Compensation Claims**

Initial Hearing:

A Scheduling Hearing has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll free at 866-943-0014 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

7

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of October, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|------|------|------|------|------|------|
| Sharon Berry | | | | | X | s.berry078@gmail.com |
| Robert O. Binkley, Jr., Esq. | | | | | X | rbinkley@raineykizer.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation