FILED

August 25, 2017

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 10:25 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | |
|---|---|
| Loretta Pentlicki, | ) Docket No. 2016-06-1777 |
|       Employee, | ) |
| And | ) |
| BlueCross BlueShield of Tennessee, | ) |
| Inc., | ) |
|       Intervenor, | ) State File No. 39259-2016 |
| v. | ) |
| Dr. Charles Fatseas, d/b/a | ) |
| Rejuvenation Plastic Surgery, | ) |
|       Employer, | ) Judge Kenneth M. Switzer |
| And | ) |
| The Cincinnati Insurance Company, | ) |
|       Carrier. | ) |

## EXPEDITED HEARING ORDER

Loretta Pentlicki filed a Request for Expedited Hearing, which hearing this Court convened on August 22, 2017. The present focus of this case is whether her fall in her employer's parking lot after a working dinner was idiopathic in nature. The Court holds that her fall was idiopathic and she is not likely to prevail at a hearing on the merits.

### History of Claim

Ms. Pentlicki worked as the head nurse and practice manager for Dr. Charles Fatseas. She fell in the work parking lot, sustaining injuries to her arm and head, on the evening of May 11, 2016. The parties dispute the circumstances of the fall and its relationship to work.

Ms. Pentlicki testified that Dr. Fatseas invited her to a working dinner, which was not unusual, although they had not gone for a working meal in a while. They rode together in his car. According to her, they discussed business matters during dinner, and she brought written information about the practice for Dr. Fatseas' review. Ms. Pentlicki

1

had one glass of wine, but she did not consider herself under the influence. Ms. Pentlicki planned to count the money received that day upon her return from dinner.

That did not occur. She testified that, on the return trip to the office:

Dr. Fatseas, um, had become over the course of the evening increasingly agitated, and, um, we—He was yelling at me. Um, we got into a very heated argument. And, um, Dr. Fatseas, who had been under a lot of stress at the time due to a number of factors going on in the practice, um, was increasingly hostile to the point where I was ac—I was actually a bit afraid of him. And I had told him on the ride home—um, pardon my language, but I was—and I've never said this to anybody before—I said, "Let me out of the [expletive] car." Because—because I—I actually was, like, um—I was uncomfortable and I didn't feel very safe at the moment. And I just felt like—I just needed to get out of the car, because this was just a very volatile conversation I didn't need to be a part of.

She said Dr. Fatseas' anger related to a pending lawsuit and her providing "things" to her legal counsel.

After they returned to the office parking lot, Dr. Fatseas pulled up near her parked car. Ms. Pentlicki gathered her purse, leftover food and work binders. She recalled opening the car door but nothing past that point until regaining consciousness as Dr. Fatseas drove her to the emergency room. She could not recall whether it was dark at the time but speculated that it was. Ms. Pentlicki testified that she would not have been in the parking lot at that time "but for" her work, which she planned to return to if she had not fallen. According to her, Dr. Fatseas was generally "a very intense person," but on this occasion he was the most upset she had ever seen him. The following exchange took place without objection on direct examination:

| Counsel: | Were you in a hurry to get out of the car because you were uncomfortable? |
| Ms. Pentlicki: | Yes. I—I didn't trust to be in a car with him. |
| Counsel: | Is it fair to say you were rushing when you got out of the car? |
| Ms. Pentlicki: | Yes. |

Ms. Pentlicki's Declaration in support of her Request for Expedited Hearing and both Petitions for Benefit Determination contain no reference to Dr. Fatseas becoming angry during the return trip to the office or her rush to exit the car.

Dr. Fatseas highlighted these inconsistencies in Ms. Pentlicki's version of events with the pleadings. In a September 16, 2016 Petition for Benefit Determination, Ms.

Pentlicki wrote that she "slipped and fell in company parking lot going into work, Dr. Fatseas was with me at the time." She said that Dr. Fatseas filed a claim the day after her fall but the carrier "road-blocked" it. Ms. Pentlicki initially had difficulty recalling the September 16 Petition for Benefit Determination but later said she filed the document "out of basically desperation," and as for the description of how she became injured, she was trying to "make it as simple as possible." A subsequent, November 14 Petition for Benefit Determination states, "I had returned from a work dinner with my boss and as I was getting out of his vehicle carrying files, paperwork I fell breaking my right humerus. Charles Fatseas, MD, was present during time of fall[.]" Ms. Pentlicki contended in her testimony that the two accounts were "technically" not different.

Dr. Fatseas' deposition testimony offered a contrary version of events. No one asked about the parties' conversation on the drive home, and he offered no information about it. Rather, he testified that, upon their return to the office parking lot, Ms. Pentlicki was "walking" to her car, carrying her purse and files. Her arms were "full with these materials," but he had "no opinion" about whether they were "a factor" in her fall. Dr. Fatseas recalled, "She suddenly fell," and, "Lori's fall was an abrupt event and she went from walking to a sudden fall." He further stated that no debris was present in the parking lot, nor were there cracks in the pavement, irregular surfaces, rocks or stones or changes in elevation.

Ms. Pentlicki required extensive treatment for her injuries. The carrier never offered a panel and denied the claim. Her private health insurer, BlueCross BlueShield of Tennessee, paid substantial sums for Ms. Pentlicki's care and intervened to seek reimbursement. Post-injury, Dr. Fatseas paid Ms. Pentlicki lost wages; he seeks reimbursement from the carrier. The parties requested only a ruling on the compensability of Ms. Pentlicki's claim.[1]

### Findings of Fact and Conclusions of Law

Since this is an expedited hearing, Ms. Pentlicki has to come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). In Tennessee, a compensable injury is "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-

---

[1] The carrier and intervenor argued extensively in briefs about whether the intervenor is a proper party. They additionally disputed whether this Court has the authority to order reimbursement for past medical care, and if so, whether the fee schedule applies. However, because the Court rules within this order that at this time Ms. Pentlicki is unlikely to prevail at a hearing on the merits, the Court need not decide these issues. *See Hooker v. Haslam*, 437 S.W.3d 409, 417 (Tenn. 2014) ("Tennessee courts follow self-imposed rules of judicial restraint so that they stay within their province to decide, not advise, and to settle rights, not to give abstract opinions.") (Internal quotation marks omitted).

102(14) (2016). Thus, the threshold issue is whether Ms. Pentlicki suffered an injury arising primarily out of and in the course and scope of her employment with Dr. Fatseas.

To resolve this issue the Court first examines the credibility of the testimony offered. The Tennessee Supreme Court gave indicia of witness credibility; specifically, trial courts should consider whether a witness is "calm or agitated, at-ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, honest or biased." *Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). This Court observed Ms. Pentlicki's demeanor and finds that, in addition to being unable to recall critical events, she appeared agitated, nervous, hesitant, stammering, defensive and argumentative. She was generally not a credible witness. Also, she advanced differing versions of the facts, which are not persuasive.

Ms. Pentlicki argued at the hearing that, after a working dinner and before she returned to the office to complete the day's tasks, she fell while exiting the car or slightly afterward in her haste to escape Dr. Fatseas' anger and remain safe. Her Declaration in support of her hearing request is unusually silent regarding Dr. Fatseas' alleged escalating anger. Her PBD filed in September alleged a slip and fall. And, her counsel asked no questions during Dr. Fatseas' deposition about the parties' dispute during that drive. Given these inconsistencies and the previous credibility finding, the Court cannot conclude that Dr. Fatseas' anger sparked her alleged hurriedness and resulting fall.

Tennessee case law provides that "[t]he mere presence of the employee at the place of injury because of the employment is not enough, as the injury must result from a hazard peculiar to the work or be caused by a risk inherent in the nature of the work," and, "An injury purely coincidental, or contemporaneous, or collateral, with the employment will not cause the injury to be considered as arising out of the employment." *Hosford v. Red Rover Preschool,* 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *20-21 (Oct. 2, 2014) (internal citations omitted). This Court holds that Ms. Pentlicki's presence in her employer's parking lot at the time of her injury was collateral to her employment and no hazard peculiar to her work caused her injury.

Rather, the carrier argued, and this Court agrees, that based on the present proof, her injury was idiopathic. "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Frye v. Vincent Printing Co., et al.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 34, at *11 (Aug. 2, 2016) (internal citation omitted). Moreover, an injury resulting from an idiopathic condition is compensable "if an employment hazard causes or exacerbates the injury." *Id.* at *12. "Cause" in this context is not "proximate cause" as used in the law of negligence; rather, "cause" means that the accident originated in the hazards to which the employee was exposed as a result of performing his or her job duties. *Id.* Further, in *Wilhelm v. Krogers,* 235 S.W.3d 122, 128-129 (Tenn. 2007), the Supreme Court held that Tennessee courts "have consistently

held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle of water or a step, in addition to the injured employee's ambulation."

Here, Dr. Fatseas, the lone witness to the incident, testified that Ms. Pentlicki "suddenly fell" and it was an "abrupt event," suggesting to this Court that her fall had an unexplained origin or cause. Further, no one disputed that the parking lot where Ms. Pentlicki walked and fell was hazard-free: no liquid, hole, obstacle such as rocks, elevations or cracks in the pavement existed where she fell. Rather, she appeared to argue that the files she carried served as a "peculiar or additional hazard." However, she offered no testimony to explain how carrying workplace items before the fall constituted a hazard or contributed to her fall. Moreover, Dr. Fatseas declined to state that carrying the files was a factor in Ms. Pentlicki's fall.

Therefore, as a matter of law, Ms. Pentlicki has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Pentlicki's claim against Dr. Fatseas and his workers' compensation carrier is denied at this time.

2. This matter is set for a Scheduling Hearing on October 16, 2017, at 10:15 a.m. Central. The parties must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call may result in a determination of the issues without the parties' participation.

**ENTERED the 25th day of August, 2017.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1. Ms. Pentlicki's Declaration
2. First Report of Injury
3. Deposition of Dr. Fatseas and exhibits
4. Petition for Benefit Determination, September 16, 2016
5. Petition for Benefit Determination, November 14, 2016
6. Aerial photograph of parking lot
7. Photograph of cars in parking lot
8. W-2

Technical record:
1. Petition for Benefit Determination
2. Employer's Position Statement
3. Carrier's Position Statement
4. Employee's Positions Statement
5. Dispute Certification Notice
6. Request for Expedited Hearing
7. Carrier's Witness and Exhibit List
8. Carrier's Prehearing Statement
9. Employer's Pre-Hearing Statement
10. Intervening Plaintiff's Pre-Hearing Statement
11. Carrier's Supplemental Brief

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of August, 2017.

| Name | Certified Mail | Fax | Regular mail | Email | Sent to |
|------|---------------|-----|--------------|-------|---------|
| Zach Wiley | | | | X | zwiley@forthepeople.com |
| Bill Easterly | | | | X | bill@billeasterly.com |
| Gerald Siciliano | | | | X | gms@lutheranderson.com |
| Mike Jones | | | | X | mjones@wimberlylawson.com |

Penny Shrum, Clerk of Court
WC.CourtClerk@tn.gov

6