FILED

June 8, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:45 AM



# COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

| | | |
|---|---|---|
| Mernetha Anderson, | ) | DOCKET #: 2015-06-0096 |
| Employee, | ) | STATE FILE #: 9579-2014 |
| versus | ) | DATE OF INJURY: December 3, 2014 |
| Ozburn-Hessey Logistics, LLC | ) | Chief Judge Switzer |
| Employer, | ) | |
| and | ) | |
| Sedgwick, | ) | |
| Insurance Carrier/TPA. | ) | |

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on May 28, 2015, upon the Request for Expedited Hearing filed by Mernetha Anderson (Ms. Anderson), the Employee, on April 21, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if the Employer, Ozburn-Hessey Logistics, LLC (OHL), is obligated to provide medical and temporary disability benefits[1]. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Anderson is entitled to medical benefits, but is not entitled to past temporary total disability benefits, and the Court is precluded from ruling upon her request for temporary partial disability benefits.

## ANALYSIS

### Issues

*Whether Ms. Anderson sustained an injury that arose primarily out of and in the course and scope of employment with OHL, or whether her injury is idiopathic in nature.*

*Whether OHL is obligated to provide a panel of physicians.*

*Whether Ms. Anderson is entitled to past temporary total disability benefits.*

---

[1] Ms. Anderson checked "Discovery" on her Petition for Benefit Determination, but the parties agreed at the Expedited Hearing that she no longer seeks this relief.

*and, if so, in what amount[2].*

## Evidence Submitted

The Court admitted into evidence the exhibits below:

1. Certified medical records of Mernetha Anderson (12 pages)
2. Affidavit of Mernetha Anderson, May 27, 2015
3. Form C-41, Wage Statement
4. OHL Employee Statement (2 pages, handwritten)
5. Photo of pallet jack
6. Photo of pallet jack
7. Photo of pallet jack.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), March 4, 2015
- Employer's position statement, March 20, 2015
- Dispute Certification Notice (DCN), April 10, 2015
- Request for Expedited Hearing, April 21, 2015
- Employer's Hearing Brief, May 27, 2015
- Employee's Hearing Brief, May 28, 2015
- Employer's Supplemental Trial Brief, May 29, 2015
- Employee's Reply to Supplemental Trial Brief, May 29, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The following witnesses provided in-person testimony: Ms. Anderson and Michael Hudson.

The parties stipulated to the following facts:

1. Ms. Anderson's date of alleged injury is December 3, 2014.
2. Ms. Anderson gave OHL proper notice of the alleged injury.
3. Ms. Anderson's compensation rate is $329.96 per week.

---

[2] Although the Dispute Certification Notice lists additional issues, the parties agreed at the Expedited Hearing that the above-listed issues were properly before the Court and that other issues did not need adjudication at this time.

# History of Claim

Ms. Anderson is a forty-two (42) year-old resident of Mississippi. She formerly resided and worked for OHL in Lebanon, Wilson County, Tennessee.

Ms. Anderson's position with OHL was "Operator One," which required her to operate a pallet jack, pictured in Exs. 5-7, to "pick cluster" items. She explained that means, in part, reading a scanner and retrieving items to fulfill the orders. She drove the pallet jack through the aisles to pick up the items, and frequently got on and off the pallet jack to place items on the pallet. OHL trained her to operate the pallet jack, including how to dismount it. Ms. Anderson testified that OHL gave her daily quotas and, therefore, the training focused on working "quick but safely."

On December 3, 2014, Ms. Anderson testified that she worked approximately six hours and was operating the pallet jack to "pick cluster." As she proceeded to step off to get an order, she noticed tightening in her foot, which she noticed again as she climbed back up the equipment. At the hearing, Ms. Anderson demonstrated the method she used to disembark from the pallet jack. In her demonstration, the Court observed that she extended her left foot to the ground first. While operating the pallet jack, she stood with the pallet facing outward to her right, in a position similar to the employee shown in the photo in Ex. 7. She stated that the elevated position on the pallet jack is approximately one foot (1') off the ground.

Ms. Anderson reported the injury, telling a supervisor that her foot felt like it was tightening in her shoe. Another supervisor agreed that her foot appeared swollen and sent her to CareSpot (*See generally,* Ex. 1). M. Lane Smith, a certified physician's assistant (PA-C), diagnosed "foot injury" (Ex. 1, p. 3), and recommended follow-up with an orthopedic specialist (Ex. 1, p. 4). PA-C Smith gave her a walking boot and prescribed Mobic, a nonsteroidal anti-inflammatory drug. *Id.* PA-C Smith additionally checked boxes on a "Return to Work" form restricting Ms. Anderson to "Seated Tasks," "Avoid walking on uneven surfaces," "Must wear splint at all times," and, "Follow up with orthopedic surgeon" (Ex. 1, p. 12). PA-C Smith additionally wrote, "Mostly sitting can walk ~ 15 mins/hr until seen by ortho." *Id.* Ms. Anderson testified that she never previously injured her foot and still experiences pain in it. She wore the boot for almost two weeks afterward.

Ms. Anderson returned to work the next day, December 4, 2014, and gave a copy of the restrictions to her supervisor. OHL complied with the restrictions for that day. Near the end of the day, OHL terminated her. Ms. Anderson said she had no reason to believe she would be terminated on that day.

Ms. Anderson said she was not able to secure other employment immediately because she was wearing the boot and still experienced pain. She returned to the

3

temporary staffing agency that placed her at OHL, SMX. Ms. Anderson testified that SMX told her it had no work for her due to her restrictions. Ultimately she found a job at Generation Changes Academy, a preschool, on January 16, 2015. Ms. Anderson earned ten dollars ($10.00) per hour, or two-hundred ninety-two dollars and eighteen cents ($292.18) per week (Ex. 2). She remained employed there until May 22, 2015, when she relocated due to her husband's transfer. She plans to seek new employment. Ms. Anderson testified that, due to the work injury, she remains unable to do the type of work she performed for OHL. According to Ms. Anderson, she does not make the motion she made when dismounting the pallet jack outside of her workplace; the only time she made that motion was at work.

On cross-examination, Ms. Anderson said the pain in her foot began while she was stepping down. She said, "It was when my foot was on the ground," and then, "When I stepped down, when I proceeded to step off the equipment, to turn to pivoted (sic) to get off, is when it – yes." The OHL Employee Statement (Ex. 4) reads, "I got ready to step off of pallet jack – a pain went through my l (left) foot." Ms. Anderson agreed her pain began when she was getting ready to disembark, while she was standing on the equipment. She stepped onto a flat, smooth, concrete floor.

With regard to the termination[3], on cross-examination, Ms. Anderson agreed that on June 30, 2014, she received a verbal warning because her production fell to seventy-four percent (74%) when her goal was ninety percent (90%). On July 18, 2014, she received a written warning when her production was at seventy-six percent (76%) with a goal of one hundred percent (100%). She received a subsequent written warning on August 1, 2014, when her production was at eighty-eight percent (88%) and the goal was one hundred percent (100%). She received a final warning on August 21, 2014, when her production was at seventy-two percent (72%). On December 4, 2014, the termination date, she signed a document stating that, the week prior, her production fell to sixty-seven percent (67%) and her four- (4) week average for the week before that was at sixty-five percent (65%). She agreed that she was standing on the pallet jack and was going to get off when she first started feeling pain.

On redirect, Ms. Anderson described the mechanism of injury as, "I'm on the pallet jack. I get off. Step to get a 40-pound shipper, which goes to the order. I turn around. I put my foot down and I felt the pain in my foot." She said the injury did not occur from pivoting. Where the OHL Employee Statement asked, "Describe injury (be

---

[3] The Court allowed OHL's counsel to review and question Ms. Anderson about documentation that purportedly contained information about previous verbal and written warnings, but the documentation was not admitted into evidence at the Expedited Hearing. The Division's Rules state, in relevant part, that, "Immediately upon receiving the motion [for Expedited Hearing], but in no event later than five (5) business days after the motion is filed with the clerk, the opposing party shall submit all information in its possession demonstrating that the employee is not entitled to temporary disability or medical benefits." Tenn. Comp. R. & Regs., 0800-02-21-.14(b) (2014). OHL did not submit the documentation in qPuestion in accordance with the rule.

specific about body parts affected, if appl.)," Ms. Anderson wrote, "(L) foot – swelled after stepping off pallet jack." She testified that that is what happened. She agreed that, "everyone had quota problems" at OHL and were frequently written up and terminated. After the August 21, 2014 warning, she received no other warnings until the December 4, 2014 termination. After the warnings, an OHL employee monitored how Ms. Anderson did her job and told her she "did great," and, "They couldn't see what the problem was."

On re-cross, Ms. Anderson agreed that she twisted and pivoted on the right leg and put her left leg on the floor.

Michael Hudson, OHL's Safety Manager, testified that he measured the distance from the platform to the floor as nine inches (9"). He said it is similar to a normal flight of stairs or a curb. Mr. Hudson said there is nothing different from stepping off a pallet jack as compared to walking up and down stairs or stepping off a curb.

On cross-examination, Mr. Hudson said the correct process for stepping off a pallet jack does not involve a turn but is a "step-up, step-down," and is similar to going up and down stairs or a curb. He said an employee could turn his or her body when stepping off, but that it would be awkward, and employees are trained to step straight back when stepping down. Mr. Hudson agreed that OHL tells employees to work quickly. He did not witness Ms. Anderson stepping off the pallet jack on the date of injury and does know whether she stepped off at an angle.

Ms. Anderson filed a PBD on March 4, 2015. The mediation specialist certified this matter to the Court on April 10, 2015.

**Ms. Anderson's Contentions**

The injury is not idiopathic in nature because stepping off at an angle and having to turn one's body to disembark from work equipment is not a motion typical to everyday life. Ms. Anderson did not become injured by twisting and pivoting, but rather by the turning of her body and stepping off at an angle, which motion is unique about her work environment as well as stepping off work equipment. *Bike v. Johnson & Johnson Health Care Sys.,* No. W2013-02728-SC-WCM-WC, 2015 Tenn. LEXIS 181 (Tenn. Workers' Comp. Panel March 13, 2015) presents almost identical facts. In *Bike,* the Panel found a compensable injury. Getting on and off equipment quickly in an effort to meet quotas, using a motion she does not otherwise make in everyday life, supports the work-relatedness of her injury.

Ms. Anderson seeks a panel of physicians from the Memphis area. She contends she is entitled to temporary total disability from the date of her discharge, December 4, 2014, until she secured new employment on January 16, 2015. Although no provider took Ms. Anderson completely off work, she is entitled to TTD because, after the

5

termination, she made efforts to seek other employment but was unable to secure other employment within the restrictions. She seeks temporary partial disability benefits from January 16, 2015, to May 22, 2015, representing the difference between the wage she earned at her new job and the wage she would have earned at OHL, had she not been terminated.

## Employer's Contentions

The alleged injury is idiopathic in nature. The mechanism of injury was not the twisting and pivoting motion, but rather Ms. Anderson placing her left foot on a flat, smooth concrete floor. Stepping on and off the pallet jack presents no special hazard, or no hazard incident to employment, because it is similar to climbing stairs or stepping up a curb. Ms. Anderson offered conflicting evidence of when her pain began. Several opinions from the Court of Compensation Claims found injuries to be idiopathic and noncompensable, where the employees were engaged in "normal things," as was Ms. Anderson.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that, "[u]nless the statute provides for a different standard of proof, at a hearing the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. § 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2014); *cf. McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

### Factual Findings

On December 3, 2014, Ms. Anderson injured her foot when she stepped down from a pallet jack while performing her work duties. The injury is work-related. On December 3, 2014, an authorized provider placed Ms. Anderson on restricted duty. On December 4, 2014, OHL terminated Ms. Anderson. Ms. Anderson was not temporarily totally disabled from the workplace accident.

6

*Application of Law to Facts*

*Ms. Anderson sustained an injury that arose primarily out of and in the course and scope of employment with OHL, that is not idiopathic in nature.*

The Workers' Compensation Law defines "injury" and "personal injury" to mean an injury by accident "arising primarily out of and in the course and scope of employment ... ." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence[.] *Id.* An injury "arises primarily out of and in the course and scope of employment" only if it has been shown "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The Tennessee Supreme Court has consistently held that, in order to qualify as a compensable workers' compensation claim, an injury must both "arise out of" and occur "in the course of" employment:

> The phrase "in the course of" refers to time, place, and circumstances, and "arising out of" refers to cause or origin. "[A]n injury by accident to an employee is in the course of employment if it occurred while he was performing a duty he was employed to do; and it is an injury arising out of employment if caused by a hazard incident to such employment."

*Cloyd v. Hartco Flooring Co.*, 274 S.W.3d 638, 643 (Tenn. 2008) (quoting *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991)).

With regard to idiopathic injuries, the Supreme Court concluded:

> An accidental injury arises out of one's employment when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. ... The mere presence of an employee at the place of injury because of his employment will not alone result in the injury being considered as arising out of the employment.

*Wilhelm v. Krogers,* 235 S.W.3d 122, 127 (Tenn. 2007) (citations omitted). In workers'

7

compensation cases, the Court generally does not award benefits where the cause of an injury has been found to be due to "some diseased or other idiopathic condition personal to the employee, absent some special hazard of the employment." *Id.* at 128. If the work environment contains an additional risk element, for example, dangerous machinery or heights, that enhances the injury that would have otherwise occurred, the resulting injury will be compensable. *Bike,* 2015 Tenn. LEXIS 181, at *11-12 (citing *Phillips v. A&H Constr. Co.,* 134 S.W.3d 145, 150 (Tenn. 2004)).

In the case at bar, Ms. Anderson testified that she felt tightening in her left foot after stepping off a pallet jack in accordance with the training employer provided. She offered sufficient detail regarding the incident, including that it occurred approximately six (6) hours into her shift on December 3, 2014, at OHL. She sustained the injury in the course of her employment because she was performing a duty she was employed to do: pick cluster. The injury arose out of her employment because it was caused by a hazard incident to Ms. Anderson's employment: disembarking from a pallet jack. In the Court's view, it is apparent to the rational mind, upon a consideration of all the circumstances, that a causal connection exists between the work conditions and Ms. Anderson's resulting injury. She did not become injured by her mere presence at work, but rather by performing her job duties.

OHL's counsel argues that Ms. Anderson offered conflicting testimony with regard to the mechanism of injury and when she experienced pain. The Court must assess the credibility of each witness considering, among other factors, whether the witness appeared at ease or nervous, self-assured or hesitant, steady or stammering, confident or defensive, forthcoming or deceitful, reasonable or argumentative, and honest or biased. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). Despite strong adversarial cross examination by OHL's counsel, the Court finds that Ms. Anderson offered credible testimony in her description of how the injury occurred. The pain began when she stepped off the pallet jack. Any conflicts in her testimony were rectified during re-direct when her counsel sufficiently rehabilitated her testimony. Moreover, OHL's sole witness admitted that he did not see the event in question, nor did OHL offer any other eyewitness testimony to contradict Ms. Anderson's version of how she became injured.

As OHL did not argue that a disease or other idiopathic condition personal to Ms. Anderson is responsible for her injury, the Court's focus turns to whether a special hazard of the employment existed. The Court concludes that it did. It is reasonable to classify the use of a pallet jack as an additional risk element or as "dangerous machinery," given that OHL trained Ms. Anderson on how to safely disembark from it. OHL likened it to descending stairs or stepping down a curb, which activities can be distinguished because they do not involve special training. Getting on and off the pallet jack strikes this Court as being more complicated and potentially dangerous than commonplace stepping up or down.

8

OHL's counsel relies upon several opinions rendered by this Court's colleagues. While certainly their reasoning is persuasive authority, this Court is not bound by their determinations. Moreover, a determination regarding whether an injury is idiopathic in nature requires a highly fact-intensive inquiry. The facts presented in the opinions cited by OHL are distinguishable from the instant case[4]. Therefore, for all the reasons above, the Court concludes that at this time, Ms. Anderson has satisfied her burden with regard to the compensability of her injury and has shown a likelihood that she would prevail at a hearing on the merits.

*OHL is obligated to provide a panel of physicians in the Memphis area.*

The Workers' Compensation Law states that the employer shall furnish, free of charge to the employee, such medical treatment as ordered by the attending physician made reasonably necessary by accident. Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014). In any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more physicians or specialty groups from which the injured employee shall select one (1) to be the treating physician. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (2014). In all cases when an employee changes the employee's community of residence after selection of a physician under this subdivision (a)(3), the employer shall provide the employee a new panel. Tenn. Code Ann. § 50-6-204(a)(3)(E) (2014).

In this case, although the parties did not submit a Form C-42 "Choice of Physician," OHL's counsel stated during the Expedited Hearing that it provided a previous panel, from which Ms. Anderson presumably chose CareSpot. Now that Ms. Anderson relocated to northern Mississippi, she requests a panel of providers in the Memphis area. OHL registered no objection to the proposed location during the Expedited Hearing, and, having found the injury compensable at this time, the Court finds it appropriate to order such a panel.

*Ms. Anderson is not entitled to past temporary total disability benefits.*

The purpose of temporary disability benefits is to provide compensation to an

---

[4] The following, non-precedential opinions that OHL cited concluded that the injuries alleged were idiopathic in nature, but present fact scenarios that can be distinguished from the instant case – namely, none involved an instrumentality of work, where the employee was trained regarding how to safely and efficiently board and disembark from it. In *Lawson v. Mid-South Transport,* No. 2014-02-0067 (Tenn. Ct. Work. Comp. Cl., April 15, 2015), the employee's knee bent backward while getting out of a truck. In *Haynes v. DCI Donor Services,* No. 2014-05-0033 (Tenn. Ct. Work. Comp. Cl., February 19, 2015), the employee, who had suffered two previous knee dislocations, sustained a third when she stood up from her desk. In *Whaley v. First Tennessee Bank,* No. 2014-03-0001 (Tenn. Ct. Work. Comp. Cl., September 16, 2014), the employee was injured after she tripped over her own feet in an area where she had walked "a million times before and never had a problem." In *Willis v. All Staff,* No. 2014-05-0005 (Tenn. Ct. Work. Comp. Cl., November 10, 2014), the employee dislocated his knee while rising from a squatted position. Finally, in *Cullum v. K-Mac Holding Corp.,* No. 2014-07-0006 (Tenn. Ct. Work. Comp. Cl., November 26, 2014), an employee who stood on a food line turned and experienced pain in her knee.

employee for "the healing period during which the employee is totally prevented from working." *Gluck Bros., Inc. v. Coffey*, 431 S.W.2d 756, 759 (Tenn. 1968). To establish such an entitlement as contemplated in Tennessee Code Annotated section 50-6-207(1), an employee must show that (1) the employee was totally disabled from working as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's total disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

In this case, Ms. Anderson did not show that she was totally disabled from working as a result of a compensable injury. Rather, PA-C Smith placed restrictions, but did not take her completely off work. Ms. Anderson asserts that her injury rendered her essentially at total disability because, after the termination, she was unable to secure alternate employment when SMX did not have a job within her restrictions; she wore a boot for treatment of her injury; her foot remained painful; and she was still experiencing pain for which she was prescribed Mobic. However, the Court notes that she approached only one prospective employer during the period for which she seeks temporary disability benefits. The Court finds that Ms. Anderson has not satisfied her burden regarding the first *Gray* factor, and, therefore, her claim for temporary total disability benefits fails at this time.

*The Court cannot determine Ms. Anderson's eligibility for past temporary partial disability benefits at this time.*

At the hearing, the parties agreed that an issue for adjudication was, in the Court's words, "whether or not the employee is entitled to some type of temporary benefits, whether they be called temporary partial or temporary total." OHL had notice that Ms. Anderson seeks both types of temporary disability benefits because she raised her entitlement to them in her affidavit, which she filed the day before the hearing (Ex. 2). Neither party briefed this specific issue. Based upon the evidence presented, this Court would be inclined to conclude that Ms. Anderson's discharge was improper (*See generally, Carter v. First Source Furniture Group*, 92 S.W.3d 367 (Tenn. 2002)), and that she is entitled to temporary partial disability benefits benefits in the amount of $2,426.94[5] for the period from January 16, 2015, to May 22, 2015.

Given that both parties were fully heard on this issue, this Court would like to enter such an order. However, at this time, the Court is restrained from doing so. Tennessee Code Annotated section 50-6-239(b)(1) (2014) requires that, "unless permission has been granted by the assigned workers' compensation judge," only issues

---

[5] Per the DCN, Ms. Anderson's average weekly wage with OHL was $494.43. According to her unrefuted testimony, she earned $292.18 per week at the successor employment. The difference is $202.25, so that two-thirds of that sum is $134.83. She worked at the lower rate of pay from January 17, 2015 through May 22, 2015, a total of 18 weeks. Thus OHL would owe Ms. Anderson $2,426.94, were the Court able to enter such an order.

that have been certified by the mediator within a DCN may be presented to a judge for adjudication; *see also, LaToya Dorsey v. Amazon.com, Inc.*, No. 2015-01-0017 (Tenn. Work. Comp. Bd., May 14, 2015). The DCN in this matter lists Ms. Anderson's entitlement only to temporary *total* disability benefits, and makes no mention of temporary *partial* disability benefits. The Workers' Compensation Law allows courts some measure of flexibility, in that a judge may grant "permission" for parties to present issues that have not been certified by a workers' compensation mediator only upon finding that: "The parties did not have knowledge of the issue prior to issuance of the dispute certification and could not have known of the issue despite reasonable investigation... ." Tenn. Code Ann. § 50-6-239(b)(2)(A) (2014). This Court cannot make such a finding, in light of the fact that both parties have been represented by highly competent counsel throughout these proceedings.

**IT IS, THEREFORE, ORDERED** as follows:

1. OHL or its workers' compensation carrier shall provide Ms. Anderson with medical treatment for her injury as required by Tennessee Code Annotated section 50-6-204, to be re-initiated by OHL or its workers' compensation carrier providing Ms. Anderson with a panel of orthopedic specialists in the Memphis area. Medical bills shall be furnished to OHL or its workers' compensation carrier by Ms. Anderson or her medical providers.

2. Ms. Anderson's request for temporary total and partial disability benefits is denied at this time.

3. This matter is set for Initial Hearing on August 6, 2015, at 9:30 a.m.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

11

**ENTERED** this the 8th day of June, 2015.

Kenneth M. Switzer, Chief Judge
Court of Workers' Compensation Claims

Initial Hearing:

An Initial Hearing has been set with **Chief Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Clerk of Court shall submit the record to the Clerk of the Appeals Board.

5.  If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of

12

Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|---------------|
| Blake Garner, Employee's attorney | | | | | ✗ | bgarner@mborolaw.com |
| Clifford Wilson, Employer's attorney | | | | | ✗ | cwilson@howardtatelaw.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13