FILED

August 4, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:52 AM



## COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | |
|---|---|
| Andrice Willingham<br>        Employee,<br>v.<br><br>Titlemax of Tennessee, Inc.<br><br>        Employer,<br>And<br><br>Trumbull Ins. Co.<br><br>        Insurance Carrier. | Docket No.: 2015-07-0088<br><br>State File No.: 34568-2015<br><br>Date of Injury: April 6, 2015<br><br>Judge: Allen Phillips |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came before the undersigned Workers' Compensation Judge on July 13, 2015, upon the Request for Expedited Hearing filed by Andrice Willingham (Ms. Willingham), the Employee, on June 15, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Titlemax of Tennessee, Inc. (Titlemax) is obligated to provide medical and/or temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Ms. Willingham is entitled to medical benefits but is not entitled to temporary benefits.

## ANALYSIS

### Issues

1. *Whether Ms. Willingham sustained an injury arising primarily out of and in the course of employment as opposed to as a result of an idiopathic condition;*

2. *Whether Ms. Willingham is entitled to medical benefits; and,*

1

*3. Whether Ms. Willingham is entitled to temporary disability benefits.*

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Affidavit of Ms. Willingham;
2. Medical Records of Regional Hospital of Jackson (Regional) and Dr. Gift Eze;
3. Wage Statement (AWW: $595.80/ CR: $397.22);
4. E-mails from Ms. Willingham to Titlemax regarding occurrence of her injury; and,
5. Separation Notice.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), May 15, 2015;
- Dispute Certification Notice (DCN), June 3, 2015;
- Request for Expedited Hearing, June 15, 2015;
- Titlemax's Position Statement submitted to mediator; and,
- Ms. Willingham's Position Statement submitted to mediator.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

Ms. Willingham provided in-person testimony.

**History of Claim**

Ms. Willingham is a thirty-one-year-old resident of Madison County, Tennessee. She worked for Titlemax as a store manager in Milan, Tennessee. As part of her job duties, Ms. Willingham performed what she described as "field work." This involved, among other tasks, traveling to customers' homes to leave delinquency notices. On April 6, 2015, she left a delinquency notice at a customer's home in Greenfield, Tennessee. As she left the customer's home, she stumbled and fell on an unleveled, downward sloping, "rocky" driveway, injuring her right ankle. Afterward, she waited in her car to compose herself and return to the Milan office.

Ms. Willingham reported her injury to her district manager, Hope Rogers, on April 6. She told Ms. Rogers that she would be unable to perform her scheduled field work in Atwood, Tennessee the next day because of her ankle injury. Ms. Willingham testified that she was "written up" by Ms. Rogers on April 7, 2015, for failing to perform the

2

"field work." She testified she again reported her injury on April 7, but supervisory personnel took no action on her reports.

Ms. Willingham sought medical care for her ankle at Regional on April 13, 2015. She reported a history of "hives, itching and ankle injury."[1] She reported the symptoms began "gradually, 6 day(s) ago, pain since walking requirement for her new job." (Ex. 2 at 2.) She requested a "work excuse" for the ankle injury. Her history included a past right ankle and great toe surgery. The treating physician noted she had a rash on her chest, arms, back and legs and an ankle sprain. *Id.* at 3. The treating physician discharged Ms. Willingham with medications for both the ankle and the rash, and directed her to follow-up with an internal medicine physician, Dr. David Larsen. *Id.* at 8. The emergency physician provided a "work release form," which allowed her to return to work without restrictions on the next day, April 14, 2015. *Id.* at 16.

On April 13, 2014, prior to the visit to Regional, Ms. Willingham e-mailed Titlemax to advise she was "headed to the ER & will keep you posted." (Ex. 4 at 3.) On April 14, 2015, Ms. Willingham advised Titlemax, in an e-mail to Ms. Rogers, that "my ER physician has recommended me to a specialist for my conditions." (Ex. 4 at 1.) She stated in the same e-mail that she would, "keep you all updated on my doctor visits [and] so forth." *Id.* Titlemax, through Ms. Rogers, terminated Ms. Willingham for "unsatisfactory job performance" on that same date, April 14. According to Ms. Willingham, the termination occurred two hours after her e-mail in which she detailed the emergency room visit.

On April 24, 2015, Ms. Willingham sought medical attention from Dr. Gift Eze, an internal medicine physician in Jackson. (Ex. 2 at 21.) Her history was an ankle sprain and a rash on her arms. *Id.* Dr. Eze diagnosed Ms. Willingham with rosea and an ankle sprain, gave her medication for the rash, and told to return on May 6, 2015. *Id.* at 24. On May 6, Ms. Willingham reported that both her rash and ankle sprain were improving. *Id.* at 27. Dr. Eze told her to return in three months. *Id.* at 28. The parties did not enter any other medical records into evidence. The parties included in the medical records, made Exhibit 2 by stipulation, medical bills from Regional.

On May 1, 2015, Ms. Willingham advised Titlemax she intended to file a workers' compensation claim, to which Titlemax replied that she should advise their carrier, "The Hartford."

Ms. Willingham testified she still had pain in her ankle that "comes and goes." She

---

[1] In her opening statement at the hearing, Ms. Willingham claimed she never had the "rash," later diagnosed as pityriasis rosea, until the work event of April 6, 2015. However, she never testified further to the condition at the hearing and the Court has not considered such condition to be an issue in this case. There is no indication in the DCN of such condition being a claimed injury. Also, the emergency room note mistakenly lists the left ankle as the injured body part.

3

is to follow up with Dr. Eze in August. At the hearing, Ms. Willingham was wearing shoes she described as "pumps," but the shoes were "comfortable" to her. On cross-examination, Titlemax's counsel confronted Ms. Willingham as to the heeled shoes and that she appeared to walk without difficulty. Ms. Willingham answered that counsel could not "feel" the pain that she felt in her ankle because of the injury.

Ms. Willingham filed a PBD on May 15, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on June 3, 2015.

### Ms. Willingham's Contentions

Ms. Willingham contends she fell in the course of her employment when leaving a notice at a customer's house. She fell in the driveway because it was rocky, not level, and sloped downward. She reported her injury to supervisory personnel at Titlemax. Because Titlemax took no action on her claim, she sought medical care on her own and incurred medical expenses. She desires further medical evaluation of her ankle.

### Titlemax's Contentions

Titlemax does not contest that Ms. Willingham fell, but contends the fall was idiopathic in nature. It relies upon *Wilhelm v. Krogers*, 235 S.W.3d 122 (Tenn. 2007) and *Byrom v. Randstad North America, L.P.*, No. M2011-00357-WC-R3-WC, 2012 Tenn. LEXIS 152 (Tenn. Workers' Comp. Panel Mar. 8, 2012). Specifically, in *Wilhelm*, the Supreme Court stated the "long standing rule" that an employee cannot recover for an injury while walking unless there is "an employment hazard, such as a puddle of water or a step, in addition to the employee's ambulation." 235 S.W.2d at 128-29. The Court reiterated the *Wilhelm* rule in *Byrom*. Additionally, Regional's medical records reveal a history of pain with walking, a history at variance with Ms. Willingham's testimony of a fall.

Titlemax also contends there is no medical proof that Ms. Willingham was restricted from work; therefore, she is not entitled to any temporary benefits. The physician at Regional released her to return to work without restrictions as of April 14, 2015. In addition, Dr. Eze did not restrict Ms. Willingham from work in any record of his treatment.

### Findings of Fact and Conclusions of Law

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with

4

basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

## Factual Findings

Ms. Willingham fell in the driveway of a Titlemax customer on April 6, 2015. The fall was not on a level surface but, instead, was on the sloped, rocky surface of the driveway. Ms. Willingham injured her right ankle when she fell and, because of that injury, was compelled to seek medical treatment. Titlemax denied the claim on grounds that the fall was idiopathic and has not paid benefits to, or on behalf of, Ms. Willingham. Ms. Willingham has yet to have a complete evaluation of her ankle injury.

## Application of Law to Facts

### Idiopathic injury

For injuries occurring on or after July 1, 2014, an employee must show the injury arose primarily out of and in the course and scope of employment, and it was caused by an incident or specific set of incidents that are identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(13)(A)(2014). In this case, the parties do not contest the injury occurred in the course of employment. Instead, the question is whether the injury arose out of the employment or was idiopathic in nature. For the following reasons, this Court finds that Ms. Willingham suffered an injury that arose out of her employment, and not through an idiopathic fall as advanced by Titlemax.

"Arising out of" the employment refers to the cause or origin of an injury. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997). For an injury to arise out of the employment, there must be a causal connection between the employment conditions and the resulting injury. *Wait v. Travelers Indem. Co.*, 240 S.W.3d 220, 227 (Tenn. 2007). In *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935 (Tenn. 1987), the Tennessee Supreme Court defined the causal connection required before an injury will be held compensable under the Workers' Compensation Law. The court opined that causal connection does not mean proximate cause as used in the law of negligence, but instead refers to cause in the sense that the accident had its origin in the hazards to which the employment exposed the employee while doing his work. *Id.* The mere presence at the place of injury because of the employment will not result in the injury being considered as arising out of the employment. *Id.* The injury must result from a danger or hazard

5

peculiar to the work or be caused by a risk inherent in the nature of the work. *Thornton v. RCA Serv. Co.*, 221 S.W.2d 954, 955 (Tenn. 1949).[2]

An idiopathic injury is diametrically opposed to one arising out of the employment. By definition, it is an injury which arises either spontaneously or from a cause which is obscure or unknown. http.//www.*Merriam-Webster.com* (last visited July 29, 2015). It is peculiar to the individual. *Id.* Tennessee law has long held idiopathic injuries are not compensable unless another hazard incident to the employment is shown to be the immediate cause of the accident. *See, e.g., Sudduth v. Williams*, 517 S.W.2d 520, 522 (Tenn. 1974).

In this case, Titlemax contends that Ms. Willingham's fall, and resulting injury, were idiopathic in nature. In support of its argument, Titlemax relies upon *Wilhelm v. Krogers*, 235 S.W.3d 122 (Tenn. 2007). In *Wilhelm*, the Tennessee Supreme Court noted that: "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking *unless there is an employment hazard, such as a puddle of water or a step,* in addition to the employee's ambulation." *Id.* at 128-29 (internal citations omitted)(emphasis added). In other words, an idiopathic injury will be compensable, "if an employment hazard causes or exacerbates the injury." *Id.* at 128 (quoting *Phillips v. A & H Constr. Co.*, 134 S.W.3d 145, 148 (Tenn. 2004)). A causal link must exist between the employment and the injury for the incident to be considered as arising out of employment. *Id.*

In *Wilhelm*, the employee was walking to his work station when he felt a "pop" in his back and/or hip. 235 S.W.3d at 126. Finding the injury to be idiopathic, the Court noted that there must be "[s]ome hazard such as the presence of a liquid, hole, obstacle, or a vehicle . . . before an award . . . is permissible." *Id.* at 129. There, the fall was to a "floor leading to the work station [which] was smooth and flat, without any steps, with no rough or uneven surfaces." *Id.* In short, "[a]n injury which occurs as an employee walks on a level, obstacle-free, concrete surface is not compensable unless a hazard contributes to the injury." *Id.* at 130.

In this case, the Court finds that Ms. Willingham was not walking on a level surface without obstacles. To the contrary, she was descending a sloping driveway that was, by her uncontroverted testimony, a rocky surface. The slope and rough surface, taken together or separately, constitute a hazard to which Ms. Willingham was exposed because of her employment.

---

[2] Case law pre-dating the July 1, 2014 Reform Act is not only persuasive, but also controlling, when the prior decision is based solely, or in pertinent part, on a previous version of the law which remains unchanged by the 2013 Reform Act. Therefore, in cases where the Supreme Court has addressed a causation issue not based on the remedial nature or liberal construction of the prior Act, this Court is bound by the Supreme Court's analysis. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *7 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Likewise, the evidence reveals no other potential causes of her fall of an idiopathic nature or otherwise unrelated to her work. As such, *Byrom* is also distinguishable. There, the employee "presented several theories concerning the reason for his fall." *Byrom v. Randstad North America, L.P.*, No. M2011-00357-WC-R3-WC, 2012 Tenn. LEXIS 152, at *14-15 (Tenn. Workers' Comp. Panel Mar. 8, 2012). Because that employee could not establish a reason for his fall related to his employment, the Panel affirmed the trial court's dismissal. *Id.* at 17. Here, Ms. Willingham established the reason for her fall by uncontroverted testimony. Titlemax's reliance upon *Wilhelm* and *Byrom* is misplaced.

The Court finds Ms. Willingham has come forward with sufficient information at this stage of the case to show she is likely to prevail on the issue of compensability.

*Medical Benefits*

The notice provisions of the statute do not require an employee to present medical proof of an injury before an employer is required to provide medical benefits. Rather, the statute contemplates that an employer will provide medical care upon receipt of notice of the injury, and then, during the course of treatment and examination, the panel doctor will render an opinion on causation. *See* Tenn. Code Ann. § 50-6-102(13)(2014). Otherwise, an employee would be forced to seek medical care on her own to begin a claim, which the statute does not contemplate. *See, McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *5 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Because of its denial, Titlemax has not provided, to date, a panel of physicians to evaluate Ms. Willingham's injuries. Therefore, she sought medical care on her own. When such is the case, an employer such as Titlemax is liable for the medical expenses incurred by an employee forced to seek medical care. *Bond v. American Air Filter*, 692 S.W.2d 638, 641 (Tenn. 1985). This Court already found that Ms. Willingham came forward with sufficient information to show a likelihood of success on the issue of compensability. Thus, Titlemax is required, pursuant to Tennessee Code Annotated section 50-6-204, to reimburse Ms. Willingham for her medical expenses incurred to date.

Likewise, Ms. Willingham established without contravention that she provided Titlemax with notice of her injury. Hence, Titlemax must provide Ms. Willingham with a panel of physicians to evaluate her ankle injury.

*Temporary Disability Benefits*

Temporary total disability (TTD) is payable to an injured employee who is totally disabled to work by her injury and while she is recovering as far as the nature of the

injury permits. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000). Under Tennessee law, to establish entitlement to temporary total benefits, the employee must show he was (1) totally disabled to work by a compensable injury; (2) that there was a causal connection between the injury and his inability to work; and (3) the duration of that period of disability. *Id.* When an employee demonstrates the ability to return to work or attains maximum medical improvement, then TTD benefits are terminated. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978). In this case, Ms. Willingham has not shown, to date, any disability to work. Regional released her to return to work on April 14, 2015, and Dr. Eze did not impose work restrictions under the evidence adduced at the hearing.

Temporary partial disability (TPD) refers to the time during which the injured employee is able to resume some gainful employment but has not yet reached maximum recovery. *Williams v. Saturn Corp.,* No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, *3 (Tenn. Workers' Comp. Panel Nov. 15, 2005). As with TTD, there must be adequate proof of a causal connection between the injury and disability for an award of TPD. To date, there is no medical opinion that Ms. Willingham is disabled from working because of her ankle injury. Therefore, at this time, she has not established entitlement to temporary partial benefits under the statute.

*Conclusion*

Ms. Willingham has come forward with sufficient evidence for this Court to conclude she is likely to prevail at a hearing on the merits on the issues of compensable medical bills and entitlement to a panel of physicians for evaluation. To date, she has not come forward with sufficient evidence to show she is likely to prevail on the issue of temporary benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Titlemax shall pay for Ms. Willingham's medical care to date pursuant to the medical fee schedule. Ms. Willingham shall provide the medical bills incurred to date to Titlemax or its carrier.

2. Titlemax, or its workers' compensation carrier, shall provide Ms. Willingham with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by providing Ms. Willingham with a panel of physicians for evaluation and/or treatment of her ankle injury as required by that statute. Ms. Willingham or the medical providers shall furnish the billing to Titlemax or its workers' compensation carrier.

3. Ms. Willingham's claim against Titlemax and its workers' compensation carrier for the requested temporary benefits is denied. At this time, Ms. Willingham has

not come forward with sufficient evidence for this Court to conclude that she is likely to prevail at a hearing on the merits.

4. This matter is set for Initial Hearing on September 21, 2015, at 9:00 AM (CDT).

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to** WCCompliance.Program@tn.gov **no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 4th day of August, 2015.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

Initial Hearing:

An Initial Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

9

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten (10) calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten (10) calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The Judge must approve the statement of the evidence before the Court Clerk may submit the record to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 4th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Andrice Willingham | | | X | andricedawn@yahoo.com |
| Gary Nichols | | | X | Gary.nichols@thehartford.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11